## AMERICAN INS CO. et al. v. PARKER et al.

### No. 6030.

United States Court of Appeals Fourth Circuit.

Argued March 10, 1950.

Decided April 11, 1950.

Charles S. Valentine, Richmond, Va., and W. R. Ashburn, Norfolk, Va. (Denny, Val-

entine & Davenport, Richmond, Va., Ashburn, Agelasto & Sellers, Norfolk, Va., Howard C. Vick, Richmond, Va., and Frank E. Sellers, Norfolk, Va., on brief), for appellants.

L. S. Parson, Norfolk, Va., and Thomas L. Woodward, Suffolk, Va., for appellees.

Before PARKER, Chief Judge, and SOPER and DOBIE, Circuit Judges.

DOBIE, Circuit Judge.

Eight foreign fire insurance companies, as plaintiffs, instituted a civil action in the District Court of the United States for the Eastern District of Virginia against the defendants individually and as partners trading under the firm name and style of Parker Peanut Company, and as partners trading under the firm name and style of Boykins Peanut Company. The District Court, sitting without a jury, at the conclusion of the evidence offered by the plaintiffs, sustained a motion to dismiss made by the defendants. Plaintiffs have duly appealed to us.

On March 18, 1946, a fire occurred at the plant of Parker Peanut Company, Suffolk, Virginia, which totally destroyed the plant. Parker Peanut Company carried with the plaintiff fire insurance companies "Use and Occupancy or Business Interruption" insurance on this plant. These insurance policies provided for payment to Parker Peanut Company in the event of destruction or damage by fire causing a total or partial suspension of business all its loss of (1) the net profit which is prevented from being earned and (2) charges and other expenses including salaries of officers, executives, department managers, employees under contract, and other important employees, as must necessarily continue during total or partial suspension of business. These expenses were known as "continuing expenses." The policies insuring Parker Peanut Company were in the aggregate principal sum of $137,500.00.

Soon after the fire occurred, about the first of April, 1946, conferences were held by the representatives of the insurance companies and the managing partner of Parker Peanut Company, Binford E. Parker, Jr., regarding the length of time of suspension of business, the amount of loss of profits by Parker Peanut Company for the suspended period, and the continuing expenses during this period. Binford E. Parker, Jr., represented to the fire insurance adjusters, Lewis Lunsford and F. G. Tucker, that it would be impossible for Parker Peanut Company to go back into business within twelve months from the date of the fire. He presented to the adjusters letters and statement from contractors and machine builders which estimated that it would take from fourteen to sixteen months to rebuild the plant and install new machinery, and Parker Peanut Company requested complete indemnity under the policies of insurance and payment for a twelve month period of suspension of business activities.

On April 11, 1946, at Suffolk, Virginia, another conference was held which was attended by Lunsford and Tucker, representing the insurance companies, and Binford E. Parker, Jr., and Ray Gould, an adjuster, representing Parker Peanut Company. At this conference the insurance companies accepted Parker's representations that Parker Peanut Company's business activities in the processing of peanuts would be suspended for at least a twelve months period. Discussions were entered into pertaining to the amount of loss of profit in said twelve months period of suspension and the expenses of Parker Peanut Company which were expected to continue during the suspension period.

After the conference of April 11, 1946, at which the extent and amount of loss had been arrived at by the insurance adjusters and Parker Peanut Company, Lunsford, one of the insurance company adjusters, on April 18, 1946, was informed that Parker Peanut Company owned another peanut processing plant at Boykins, Virginia, approximately forty-five miles from Suffolk. Lunsford telephoned Binford E. Parker, Jr., to find out from Parker the facts respecting this plant and asked whether Parker Peanut Company could secure this plant so as to reduce the loss of the insurance companies as provided for in the insurance policies. Lunsford was told by Parker that

Parker Peanut Company owned a peanut processing plant at Boykins, Virginia, to the extent of a 40% interest therein, but that 60% of said plant was owned by two other parties, namely C. B. Pond and W. T. Pond, that the plant was under a permanent lease to the Boykins Peanut Company, was not available to Parker Peanut Company, and could not be secured by Parker Peanut Company. After receiving this information from Parker, Lunsford, believing that the Boykins plant could not be secured to reduce the companies' losses, sent the insurance companies proof of loss signed by Parker Peanut Company. The claim of Parker Peanut Company amounting to $126,969.34, was paid by the insurance companies around the first of May, 1946, based on the settlement that had been arrived at in the conference of April 11, 1946.

In early 1947, about ten months after this settlement, Lunsford received information that Parker Peanut Company was operating its business at the plant leased to Boykins Peanut Company, at Boykins, Virginia. Lunsford thereupon went to Suffolk and conferred with Binford Parker, Jr., about these operations. Another conference between Lunsford and Parker was held at Suffolk on January 11, 1948. Lunsford's claim for a refund to the insurance companies, as the result of Parker Peanut Company's operations, was refused by Parker.

This civil action was instituted to rescind the settlement made by the insurance companies with Parker Peanut Company on the ground that this settlement was obtained by the defendants through the fraud and misrepresentation of Binford Parker, Jr., and to recover certain estimated continuing expenses alleged to have been recouped by Parker Peanut Company, during the period for which payment of these expenses had been made by the insurance companies, as a result of the operations at Boykins.

The insurance policies here involved contained the following provisions:

"*Concealment, fraud.* This entire policy shall be void if, whether before or after a loss, the insured has wilfully concealed or misrepresented any material fact or circumstance concerning this insurance or the subject thereof, or the interest of the insured therein, or in case of any fraud or false swearing by the insured relating thereto.

"*Resumption of Operations.* If the insured, by resumption of complete or partial operation of the property herein described or by making use of other property, equipment or supplies, could reduce the loss hereunder such reduction shall be taken into account in arriving at the amount of loss hereunder."

The District Judge, on the question of misrepresentations or false statements made by Binford Parker, Jr., in holding squarely in favor of the defendants, stated: "It is the view of the Court that the evidence, taken most favorably to the plaintiffs, does not show a falsity of representation, and without such a showing of falsity in fact, there can be no rescission of this agreement. The evidence shows that the agreement was made between the adjusters and the plaintiffs at arm's length; that there was no positive or negative concealment by the insured of any fact then known to them which would have entitled the plaintiffs to have reduced their indemnifying payment through the use by the defendants of other property."

We do not feel justified in setting aside this finding on the score that it is clearly erroneous.

Lunsford, adjuster for the insurance companies, as to the telephone conversation between him and Binford Parker, Jr., on April 18, 1946, testified:

"So, we called Mr. Parker and he said that the Parker estate owned 40 percent; that was now owned by the partners in the Parker Peanut Company, but that 60 percent was owned by Mr. W. T. Pond and Mr. C. B. Pond, I believe, so that Parker had no control over the property. He said, furthermore, it was under permanent lease and was not available.

"Q. Did you ask him whether he could get the property? A. He said he could not."

The testimony of Binford Parker, Jr., was:

"As I remember, Mr. Lunsford called me over the telephone—I don't know what date —and asked me whether the plant was available. I think the very words I used were, 'No, I don't think so'—'No' or 'I don't think so'; that it was under a continuous lease.

\* \* \* \* \* \*

"Q. Had you, at the time you made that representation to him, asked your wife and your brothers-in-law whether it was available? A. No, sir."

Charles B. Pond, Jr., a partner in the Boykins Peanut Company, also the husband of Sarah Parker Pond (one of the partners in the Parker Peanut Company), testified:

"Q. As a matter of fact, it was available any time Binford Parker wanted to use it wasn't it? A. No, sir."

There was evidence (which was not contradicted) that the Parker Peanut Company took possession of the plant of the Boykins Peanut Company on October 1, 1946, and operated the plant successfully; that the profits of these operations were (under the contract between the two peanut companies) turned over by the Parker Peanut Company to the Boykins Peanut Company; that the peanuts processed at the Boykins plant were sold under the name of the Parker Peanut Company, using the Parker trade and brand names; that thus these brand names were kept before the peanut buying public and the existing good will between the Parker Peanut Company and its customers was maintained and the expenses of maintaining an organization were taken care of, although these had been covered by the prior settlement with the company, that the partners in the two peanut companies were closely connected by marriage and other ties.

It is clear from the record before us that there was no false representation of fact and we do not think that a finding of wilful concealment would be justified. The fact that the insured was able to secure the contract with the Boykins Peanut Company

under which the operation of the plant of that company was taken over by the insured does not establish that at the time of the settlement that plant was available to the insured, as contended by the insurance companies. For all that appears in the record before us, such contract may not have been thought of until after the settlement was made, and the undisputed evidence is that the negotiations which led up to the contract did not occur until several months later. This Court would certainly not be justified in reversing the findings of the trial court, who saw and heard the witnesses, in disregard of this evidence and on the basis of unsupported conjecture. If the settlement was made in good faith, without wilful misrepresentation or concealment, it would not be invalidated by reason of the fact that subsequently the insured was able to enter into a contract under which the losses resulting from the fire were reduced to a less amount than estimated at the time of settlement; nor would such fact justify recovery of any part of the amount paid in settlement.

If the settlement here be valid, as we have held, we think this effectively disposes of the whole case and bars any recovery by the plaintiffs. As the District Judge stated in his opinion: "The instant settlement agreement contained no obligation for the refund to the insurers of any part of the estimated continuing expenses as might be later earned."

Nor can the doctrine of subrogation be applied in aid of the claim which the plaintiffs assert. Plaintiffs, in their brief, admit they can cite no case supporting their position here. Equally without merit is the contention that defendants must refund to plaintiffs any continuing expenses that Parker Peanut Company may have been saved as a result of the operations at Boykins under the doctrine of unjust enrichment or an implied trust.

The judgment of the District Court is affirmed.

Affirmed.